Van Brunt, P. J.
This action was brought to recover damages from the defendants for á breach of contract of sale of a quantity of railroad ties and lumber.
The contract was entered into in the city of Philadelphia, in the state of Pennsylvania, and was to be _ wholly performed in that state, of which state the plaintiff was a resident. The answer of the. defendants denied the making the contract alleged in the complaint, or any breach of it upon their part, and alleged that they simply acted as *458 brokers and claimed from the plaintiff their compensation as such.
Upon the trial; and upon this appeal, the defendants claimed that there was no proof that the defendants ever entered into a contract with the plaintiff, and further that if there was any proof of a contract, that such contract was void because no sufficient memorandum thereof was made in writing to comply with the provisions of the statute of frauds.
It is admitted that an arrangement was made by the plaintiff for the sale and delivery of this merchandise, but the defendants claim that D. R. Kelly & Co. were the contracting parties and not the defendants.
D. R. Kelly & Co. were contractors for the building of a railroad in the state of Rermsylvania and the defendants were commission merchants and dealers in railroad supplies.
The plaintiff was anxious to get the contract for the furnishing of the railroad ties needed by Kelly & Co. in the prosecution of their work.
In the furtherance of this object the plaintiff, Mr. Kelly, and the defendant Vanderbilt had a meeting in Philadelphia, in which the matter of making of this contract was discussed, Mr. Vanderbilt acting as the principal spokesman upon the one side and the plaintiff upon the other. Mr. Vanderbilt asked Mr. Kelly what he needed and Mr. Vanderbilt then wrote a memorandum containing quantities and prices. The plaintiff requested Mr. Vanderbilt to address it to him and sign it, which he did and handed the memorandum to the plaintiff, which was as follows:
“To D. Gring:
“55,000 oak. and chestnut ties at West Philadelphia at 53 cts.; if sent in by cars, then 1J cts. to be added, to be., shipped by May 1st and to come in right along.
“20 sets of sawed switch at 13 cts. per foot, to come in with the ties.
“3,400 sawed oak bridge ties, to come in by cars to Bryn. Mawr, per 1, 28. per M., also 8 M. crossing plank, 16 feet long, 3 in. thick.
“VANDERBILT & HOPKINS.”
Another memorandum was made by Mr. Vanderbilt and delivered to the plaintiff for pine and hemlock, which would also be needed.
This memorandum was not signed by anybody nor addressed to anybody, and was as follows:

*459
“Pine Bill.

“430 pcs., 1 x 12, 24 feet.
o£ these can be 12 feet long.

“Hemlock.

“364 pcs., 10 x 12, 24 feet.
“364 pcs., 3 x 10, 24 feet.”
For Bryn Mawr, Pa.
“113 pcs., 12 x 12, 12 feet.
“396 pcs., 7 x 12, 24 feet.
“To West Philadelphia.
“Consign to.”
The plaintiff gave evidence tending to show that during the course of this conversation, and after the memorandum had been signed, the plaintiff expressed some anxiety about his pay, and to allay his fears in this regard Mr. Vanderbilt stated to him, “Never mind, Gring; you look to us for your pay, we are your paymasters.”
There seems to have been sufficient upon the face of this evidence to justify the referee in finding that the credit for this merchandise was given by the plaintiff to the defendants and that the defendants undertook to pay for the same, and that, therefore, the plaintiff and the defendants were the contracting parties, although the merchandise was to be delivered to and used by D. B. Kelly & Co.
It is true that it was known that D. B. Kelley & Co. were the parties desirous to procure this merchandise, but it is equally true that the plaintiff was unwilling to enter into the performance of this contract upon the credit of D. B. Kelly & Co., as such credit then stood, if the evidence, of the plaintiff and Mr. Kelly is to be believed, and to remove such hesitancy the plaintiff is reminded by Mr. Vanderbilt that the defendants are his paymasters.
With this evidence before him the referee was certainly justified in coming to the conclusion that the defendants were the contracting parties and not D. B. Kelly & Co.
It does not seem necessary to discuss the question as to whether the memorandum made by Mr. Vanderbilt was sufficient to fulfill the requirements of our Statute of Frauds.
The plaintiff was a resident of Pennsylvania, the contract was entered into in Pennsylvania and was to be performed in that state, and hence the lex loci contractus must necessarily govern the question as to the validity of the contract.
The evidence offered upon the part of the plaintiff showed that at the time of the making of .the contract sued upon, *460 the Statute of Frauds in the State of Pennsylvania did not affect the contracts for the sale and delivery of personal property and consequently there was no Statute of Frauds applicable to the contract in question.
The referee having found upon the evidence that a contract had been entered into between the plaintiff and the defendants, also found upon competent evidence that there had been a breach of such contract.
In the testimony relating to the proof of damages he seems, however, to have made a fatal error.
One of the elements of damages which the plaintiff proved was for black oak and red oak ties, which he had prepared from his own lands.
The defendants, in answer to this claim, offered to prove that as a matter of custom, red oak and black oak ties were not merchantable ties. This evidence was excluded as incompetent and immaterial.
The contract sued upon provided for oak and chestnut ties. The kind of oak is not mentioned, but if there was any custom in the trade, by which certain kinds of oak ties were not deemed good deliveries under such a contract, the defendants clearly had the right to show this fact. Such evidence is not inconsistent with the terms of the contract, but is merely in explanation of it. Where two parties in a particular trade use language in the making of a contract which may refer to different articles, such ambiguity may be explained by paroi evidence of what the usage of the trade is in respect to the matter. Pollen v. LeRoy, 30 N. Y., 563.
There was no objection taken at the trial to the competency of the witness to speak upon the subject, and, consequently, no such objection can be considered now.
It is sought to sustain this ruling by the suggestion that these ties were to be used for what is generally known as construction ties, as distinguished from ties used for the permanent bed of a railroad. No such point was made upon the trial and our attention has not been called to any evidence to sustain the suggestion, nor have we been able to find any. Even if the proof showed that these ties were intended for construction ties, there is no evidence proving that a different tie is used as a construction tie from that used for the permanent bed of a railroad.
In some other respects the referee seems to have taken an erroneous view of the rule as to the measure of damages which it is not necessary to advert to here, as the one above mentioned seems to make necessary a new trial.
Judgment reversed and new trial ordered before another referee, costs to the appellant to abide the event.
Daniels J., concurs; Brady, J., concurs in the result.